<u>IN THE UNITED STATES DISTRICT COURT</u>
<u>FOR THE EASTERN DISTRICT OF PENNSYLVANIA</u>

| | | |
|---|---|---|
| CITY LINE-HAMILTON | ) | |
| BUILDERS, LLC, | ) | Civil Action |
| Trading as City Line Construction, | ) | No. 12-cv-03291 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CINCINNATI INSURANCE COMPANY and | ) | |
| L.J SHAW & COMPANY, | ) | |
| | ) | |
| Defendants | ) | |

                          *    *    *

APPEARANCES:

            EDWARD R. EIDELMAN, ESQUIRE
                On behalf of Plaintiff

            WILLIAM O. KREKSTEIN, ESQUIRE
                On behalf of Defendants

                          *    *    *

                  <u>O P I N I O N</u>

JAMES KNOLL GARDNER
United States District Judge

        This matter is before the court on Plaintiff's Motion

for Leave to File Amended Complaint Joining James and Tara Knicos

and for Remand to Northampton County Court, which motion was

filed July 3, 2012 ("Plaintiff's Motion")[1].  On July 17, 2012 a

Brief in Opposition to Plaintiff's Motion to Amend the

---

        [1]    The motion was accompanied by a Memorandum in Support of
Plaintiff's Motion to Amend the Complaint to Join James and Tara Knicos as
Individual Defendants and Remand the Case to Northampton County Court
("Plaintiff's Memorandum") and Exhibit 1 (the proposed Amended Complaint).

Complaint to Join James and Tara Knicos and to Remand was filed by defendants ("Defendants' Brief")[2].  For the reasons expressed below, I grant plaintiff's motion to amend the Complaint and remand the matter to the Court of Common Pleas of Northampton County, Pennsylvania.

<u>BACKGROUND</u>

Plaintiff City Line-Hamilton Builders, LLC, trading as City Line Construction filed a suit in the Court of Common Pleas of Northampton County, Pennsylvania seeking $136,013.96 as payment for services performed at a fire scene in that county. The fire occurred at the Nicos Polymers Group Plant owned by James Knicos and Tara Knicos, who are husband and wife. Plaintiff contends that it was hired to perform, and did perform, professional services at the property to help control and extinguish the fire, to mitigate the fire damage, to retrieve personal items belonging to the plant owners, and to assist in the investigation of the fire.

Plaintiff alleged that the Nicos Plant was insured for fire damage by defendant, The Cincinnati Insurance Company. Plaintiff further alleged that defendant insurance company hired defendant L.J. Shaw & Company to adjust the claim.  Those

_____

[2]     Defendant's brief was accompanied by two exhibits.  Exhibit A is a copy of the Complaint originally filed in the Court of Common Pleas of Northampton County, Pennsylvania.  Exhibit B is an Order of Court filed by that court on May 10, 2012, disposing of preliminary objections to the Complaint.

defendants removed the matter from the Northampton County Court of Common Pleas to this court, the United States District Court for the Eastern District of Pennsylvania.

After removal, plaintiff filed the within motion to amend the Complaint and to remand the action to the Northampton County state court.  The motion to amend seeks to join as defendants the property owners James and Tara Knicos.  Adding them will eliminate federal diversity jurisdiction because Mr. and Mrs. Knicos are citizens and residents of Pennsylvania and plaintiff is a Pennsylvania limited liability company, all of whose members are citizens of the Commonwealth of Pennsylvania, with its principal office in Allentown, Pennsylvania.

Therefore, plaintiff requests that, if its motion to amend is granted, the case be remanded back to the Court of Common Pleas of Northampton County.

<u>SUMMARY OF DECISION</u>

I grant plaintiff's motion to amend the Complaint because I conclude that plaintiff's purpose in seeking leave to amend its Complaint was not to destroy diversity jurisdiction, plaintiff was not dilatory in filing its motion for leave to amend, denial of the motion may cause plaintiff harm, and balancing the equities favors plaintiff.

Specifically, plaintiff has a proper reason for joining the property owners because plaintiff became aware of information

after filing its Complaint that gave rise to a scenario in which joinder of James and Tara Knicos became increasingly necessary.[3] Moreover, plaintiff subsequently acted upon the newly acquired information within a reasonable time.

Furthermore, plaintiff stands to suffer possible harm in the event its motion is denied by having to litigate two substantially similar claims concurrently in separate fora.  The cost of litigating two such claims, along with the possibility of inconsistent rulings, and judicial economy all favor the granting of plaintiff's motion.

Defendants' assertion that they would be prejudiced by granting plaintiff's motion is unconvincing.  Defendants face a similar jury pool and the same substantive law whether defending in state or federal court.  Furthermore, defendants, as insurers of the property owners, are directly interested in the proposed claims against the property owners and thus may actually benefit from joinder.

---

[3]     Plaintiff's justification for not seeking to join the property owners as defendants until after removal of this case to federal court was not to defeat federal diversity jurisdiction.  Rather, plaintiff learned for the first time on May 17, 2012 when defendants Cincinnati and Shaw answered the Complaint, and on June 8, 2012 when they answered plaintiff's discovery request, that those defendants contended that they told plaintiff on the day of the plant fire on August 12, 2011 that they would not pay plaintiff to do any work at the fire site.  This new information was contrary to plaintiff's position that defendants Cincinnati and Shaw did not refuse to pay for plaintiff's work until after the work was completed and defendants received an invoice detailing the charges on September 20, 2011.

     If the jury accepts defendants' version, defendants Cincinnati and Shaw may not be liable for quantum meruit, and plaintiff's only remedy for those claims would likely be against the Knicos as the property owner.

- 4 -

Therefore, because granting plaintiff's motion destroys diversity, plaintiff's motion to remand is also granted.

<u>JURISDICTION</u>

This action is before the court on diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Plaintiff City Line-Hamilton Builders, LLC is a limited liability company.  All members of City Line-Hamilton Builders, LLC are citizens of the Commonwealth of Pennsylvania.[4]

Defendant Cincinnati Insurance Company is an Ohio corporation with its principal place of business in Fairfield, Ohio.  Defendant L.J. Shaw & Company is an Illinois corporation with its principal place of business in Lombard, Illinois.

The amount in controversy is in excess of $75,000.

<u>VENUE</u>

Venue is proper in the United States District Court for the Eastern District of Pennsylvania because a substantial part of the events giving rise to this action occurred in this district, namely, Northampton County, Pennsylvania.  <u>See</u> 28 U.S.C. §§ 118, 1391(b).

---

[4]     See Amended Notice of Removal, at ¶ 18

PLAINTIFF'S CLAIMS

In plaintiff's four-count Complaint,[5] plaintiff asserts state-law claims for implied contract (Count I) and quantum meruit (Count II) against defendants Cincinnati Insurance Company ("Cincinnati") and L.J. Shaw & Company ("Shaw").  Plaintiff asserts fraudulent misrepresentation (Count III) and negligent misrepresentation (Count IV) against individual defendants Suzanne Cressman and Paul A. Vanderheyden[6].

Specifically, in Counts I and II, plaintiff alleges that Cincinnati and Shaw, by and through their agents or employees, who were their adjusters, Ms. Cressman and Mr. Vanderheyden, respectively, authorized plaintiff to complete professional services at the Nicos Polymers Group Plant, ("Nicos Plant"), following a fire that damaged the property.[7]

Plaintiff is in the business of construction and fire clean-up.  Previously, with the knowledge of, and at the behest of Ms. Cressman, plaintiff performed services after a fire at the

---

[5]     Plaintiff filed its Complaint on February 13, 2012 in the Court of Common Pleas of Northampton County, Pennsylvania in case number A-48-CV-2012-1601 ("Complaint").  Copies of the Complaint are attached as Exhibit A to each of defendants' Notice of Removal, Amended Notice of Removal, and brief in opposition to plaintiff's motion to amend Complaint.

[6]     Suzanne Cressman was an agent or employee of, and acting as an adjuster for, defendant Cincinnati Insurance Company.  Paul Vanderheyden was an agent or employee of, and acting as an adjuster for, defendant L.J. Shaw & Company.  (Complaint at ¶¶ 3, 4, 8 and 9.)  Neither Ms. Cressman nor Mr. Vanderheyden is named as a defendant in plaintiff's proposed Amended Complaint.

[7]     Complaint at ¶¶ 12-19 and 26.

National Plastics Company in Easton, Pennsylvania.  Defendant Cincinnati was the insurer of the National Plastics Company property and defendant Shaw was the insurance adjuster for that property.[8]

On August 2, 2011 a fire broke out at the Nicos Plant in Plainfield Township, Northampton County, Pennsylvania.[9] Plaintiff avers that Ms. Cressman, who was familiar with the quality of work of City Line from the National Plastics fire, specifically requested the services of City Line at the Nicos Plant.  Furthermore, plaintiff asserts that Ms. Cressman and Mr. Vanderheyden were aware that City Line was performing services at the Nicos Plant and occasionally directed City Line or its subcontractors to perform specific duties at the scene.[10]

Plaintiff contends that it subsequently learned that it would not be paid for any services performed at the Nicos Plant "because no written contract had been entered into as between City Line and either the owners or tenants of the Nicos property."[11]

---

[8]     Complaint at ¶¶ 7-9.

[9]     Cincinnati and Shaw were the insurer and insurance adjuster companies, respectively, for the Nicos Plant.  Complaint at ¶¶ 11 and 12. James and Tara Knicos are the property owners of the Nicos Plant. Plaintiff's proposed Amended Complaint ("Amended Complaint") at ¶ 10.

[10]    Complaint at ¶¶ 14 and 19.

[11]    Complaint at ¶ 21.

- 7 -

The timing of defendants' statement informing plaintiff that it would not be paid is disputed.  Plaintiff contends it was told only after sending defendant Cincinnati the September 20, 2011 invoice for services rendered at the Nicos Plant.[12] Defendants contend that plaintiff was told of Cincinnati's unwillingness to pay plaintiff for services rendered on the day of the fire while plaintiff was on scene at the Nicos Plant.[13]

Count I of plaintiff's Complaint asserts that the failure of Cincinnati and Shaw to pay plaintiff for the professional services rendered at the Nicos Plant breached an implied contract created by the conduct of Ms. Cressman and Mr. Vanderheyden as agents or employees of Cincinnati and Shaw, respectively.  In Count II, plaintiff contends that the actions and representations by Ms. Cressman and Mr. Vanderheyden entitle plaintiff to damages under the doctrine of quantum meruit because of plaintiff's performance of services at the Nicos Plant.[14]

With respect to Counts III and IV, plaintiff alleged that Ms. Cressman and Mr. Vanderheyden falsely and negligently misrepresented facts pertaining to plaintiff's authorization to

---

[12]   Complaint at ¶¶ 20 and 21; Exhibit 1 to plaintiff's Complaint, September 20, 2011 invoice.

[13]   Exhibit A to defendants' Amended Notice of Removal, Defendant, The Cincinnati Insurance Company's Answer With New Matter and Defendant L.J. Shaw & Company's Answer With New Matter, collectively ("Defendant's Answers") at ¶ 21.

[14]   Complaint at ¶¶ 21, 28, 30 and 31.

perform services at the Nicos Polymers Group Plant, intending plaintiff to rely on the misrepresentations.[15]

In plaintiff's proposed Amended Complaint, plaintiff seeks to join James and Tara Knicos, the owners of the Nicos Plant property, as defendants in Counts I and II along with Cincinnati and Shaw.  Additionally, plaintiff abandons, and does not include, Counts III and IV against Ms. Cressman and Mr. Vanderheyden.

Specifically, plaintiffs allege that the owners were present at the scene of the Nicos Plant following the fire and had knowledge of, and gave authorization to, plaintiff, to perform professional services at the Nicos Plant.[16]

PROCEDURAL HISTORY

On February 13, 2012 plaintiff City Line-Hamilton Builders, LLC ("City Line") filed a four-count Complaint against defendants Cincinnati and Shaw, along with individual defendants Ms. Cressman and Mr. Vanderheyden, in The Court of Common Pleas of Northampton County, Pennsylvania.

On March 9, 2012 Defendants' Preliminary Objections were filed in state court seeking dismissal of Counts III and IV for failure to state a claim.  On May 10, 2012 Judge Michael J. Koury, Jr., of the Court of Common Pleas of Northampton County,

---

[15]    Complaint at ¶¶ 12-19, 34-36 and 40-43.

[16]    Amended Complaint at ¶¶ 10, 14-17, 19 and 20.

by Order of Court, sustained in part, and denied in part, defendants' preliminary objections and gave City Line twenty days to amend its Complaint.

Specifically, the order sustained defendants' preliminary objection to Count III of plaintiff's Complaint for fraudulent misrepresentation against Ms. Cressman and Mr. Vanderheyden for failure to state a claim.

Judge Koury's order further denied defendants' preliminary objection to Count IV of plaintiff's Complaint as moot because plaintiff agreed that the claim for negligent misrepresentation should be withdrawn.[17]

On May 17, 2012, Defendant, The Cincinnati Insurance Company's Answer with New Matter and Defendant L.J. Shaw & Company's Answer with New Matter were filed.

On May 29, 2012 counsel for City Line informed counsel for defendants by letter that it did not intend to amend its Complaint with respects to Counts III and IV against Ms. Cressman and Mr. Vanderheyden.[18]

On June 7, 2012 defendants filed their Notice of Removal seeking removal of this action from the Court of Common Pleas of Northampton County to the United States District Court

---

[17]     Defendants' asserted that the "Economic Loss Doctrine" barred plaintiff's recovery for negligent misrepresentation.  Plaintiff conceded and agreed to withdraw Count IV.

[18]     Exhibit B to defendants' Amended Notice of Removal filed June 15, 2012.

for the Eastern District of Pennsylvania based on diversity of citizenship.[19]   On June 15, 2012 defendants filed an Amended Notice of Removal.

On July 7, 2012 plaintiff filed its within motion seeking leave to amend its Complaint in order to join James and Tara Knicos, the owners of the Nicos Plant property, as defendants.  On July 17, 2012 defendants filed their brief in opposition to plaintiff's motion.

### CONTENTIONS OF THE PARTIES

### Contentions of Plaintiff

Plaintiff contends that leave to amend its Complaint to join James and Tara Knicos should be granted because plaintiff has a colorable claim against the property owners and the purpose of joinder is not merely to defeat diversity jurisdiction.

Plaintiff further contends that it was not dilitory in filing its motion; denial of its motion will prejudice plaintiff by requiring it to litigate two cases involving the same facts, evidence, and legal issues concurrently in different fora; and granting plaintiff's motion will not prejudice defendants.

Plaintiff acknowledges that joining the owners will defeat diversity jurisdiction, thus requiring this court to

---

[19]   Complete diversity was realized with the dismissal of Counts III and IV against Ms. Cressman who was the only defendant with Pennsylvania citizenship.

remand the case back to the Court of Common Pleas of Northampton County, Pennsylvania.

<u>Contentions of Defendants</u>

Defendants contend that plaintiff's motion for leave to amend its Complaint should be denied because plaintiff's sole purpose for joining the owners is to defeat federal diversity jurisdiction.

Defendants further contend that plaintiff was dilatory in filing its motion, plaintiff will not be significantly injured by litigating two cases in separate fora, and that defendants will be prejudiced by being denied their choice of forum.

Defendants also argue that joining James and Tara Knicos as parties in this action is improper and that this court should deny plaintiff's motion, retain jurisdiction, and resolve the case on the merits.

<u>DISCUSSION</u>

Generally, when a plaintiff requires leave of the court to amend its complaint, "[t]he court should freely give leave when justice requires."  Fed.R.Civ.P. 15(a)(2).  Additionally, a plaintiff is free to join proper defendants. Fed.R.Civ.P 20(a)(1).  However, when a plaintiff seeks leave to amend its complaint after the case has been properly removed to

federal court and the amendment involves the joining of a non-diverse defendant, 28 U.S.C. § 1447(e) controls.[20]

Section 1447(e) gives the district court substantial deference when determining the propriety of a plaintiff's motion for leave to amend and to join a non-diverse defendant. Kahhan v. Massachusetts Casualty Insurance Company, 2001 WL 1454063 at *2 (E.D.Pa. Nov. 14, 2001) (Yohn, Jr., J.), citing Carter v. Dover Corp., Rotary Lift Division, 753 F.Supp. 577, 579 (E.D.Pa. 1991) (Waldman, J.).

The United States Court of Appeals for the Third Circuit has yet to adopt a standard for a district court's analysis of joinder under section 1447(e). Carter, supra. Therefore, courts within this district have adopted the standard enunciated by the United States Court of Appeals for the Fifth Circuit in Hensgens v. Deere & Company, 833 F.2d 1179 (5th Cir. 1987).[21] The Hensgens test balances defendant's interest in maintaining a federal suit with plaintiff's competing interest of

---

[20]    28 U.S.C. § 1447(e) states in relevant part, "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy diversity subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to State court."

[21]    Congress passed section 1447(e) in 1988 stating that this section "takes advantage of the opportunity opened by removal from a state court to permit remand if a plaintiff seeks to join a diversity-destroying defendant after removal.  Joinder coupled with remand may be more attractive than either dismissal under civil rule 19(b) or denial of joinder." Carter, 753 F.Supp. at 579, quoting H.R.Rep. No. 889, 100th Cong., 2d Sess. at 72-73.

Although Hensgens predates the passage of section 1447(e), its four-factor test has been subsequently utilized by courts in this district in interpreting § 1447(e).  See Carter, 753 F.Supp. at 579.

avoiding parallel suits with the danger of inconsistent results. Hensgens, 833 F.2d at 1182.

In Hensgens, the Fifth Circuit outlined four factors which courts should consider when determining if leave to amend to join a diversity-destroying defendant is proper: (1) whether plaintiff's purpose is to defeat federal jurisdiction; (2) whether plaintiff has acted in a dilatory fashion in seeking leave to amend; (3) whether plaintiff would be significantly harmed should leave be denied; and (4) any other factors bearing on the equities.  Hensgens, 833 F.2d at 1182.

Although district courts are given substantial deference, there is a "general presumption in favor of state jurisdiction...and all doubts should be resolved in favor of remand." Estate of May Horvath v. Ciocca, 2008 WL 938927, at *6 (E.D.Pa. April 4, 2008) (Baylson, J.).

Moreover, plaintiffs generally enjoy the option of joining whomever they choose, subject only to rules of joinder. Id.  Accordingly, while defendants' do not have an express burden of showing that joinder is improper, in a close case, and in the absence of clear evidence of plaintiff having an impermissible motive, I will err on the side of remand based upon the presumption of state court jurisdiction.

<u>Plaintiff's Purpose in Seeking Joinder</u>

Whether plaintiff's purpose for joining non-diverse defendants is proper depends on the circumstances and timing of plaintiff's actions.  Relevant circumstances include whether the defendants sought to be joined were known to the plaintiffs at the time of filing the original complaint, or if plaintiffs gained additional information after filing the original complaint.  See <u>Montalvo v. John Doe I</u>, 2010 WL 3928536 (E.D.Pa. Oct. 5, 2010) (O'Neill, Jr., S.J.); <u>John Doe #4 v. The Social Society for Creative Anachronism</u>, 2007 WL 2155553 (E.D.Pa. July 25, 2007) (Baylson, J.).[22]

The timing of plaintiffs motion, although also relevant to the second factor of the <u>Hensgens</u> test, can be circumstantial evidence of plaintiffs motive and purpose for joining a non-diverse defendant.  See <u>Hoffman v. Lowe's Companies, Inc.</u>, 2008 WL 3889998 (E.D.Pa. Aug. 20, 2008) (Kauffman, S.J.).[23]

_____

[22]     In <u>Montalvo</u>, my colleague, Senior United States District Judge Thomas N. O'Neill, Jr., found plaintiff's purpose for joining two non-diverse employees of American Airlines proper despite being filed after removal because it was not until discovery had commenced that plaintiff learned the identities of the employees.  <u>Montalvo</u>, 2010 WL 3928536 at *2-3.

On the other hand, in <u>John Doe #4</u>, my colleague, then United States District Court Judge, now Senior District Judge, Michael M. Baylson, found plaintiff's purpose for joining the non-diverse defendant to be solely for the purpose of destroying diversity because plaintiffs were fully aware of the non-diverse defendant's role in the underlying claim and learned no new information regarding his role after filing the original complaint. <u>John Doe #4</u>, 2007 WL 2155553 at *4.

[23]     In <u>Hoffman</u>, my former colleague, Senior United States District Judge Bruce W. Kauffman denied plaintiff's motion to join a non-diverse party

(<u>Footnote 23 continued:</u>)

(<u>Continuation of footnote 23:</u>)

after defendant had removed the case because plaintiff's sole purpose was to defeat diversity. <u>Hoffman</u>, 2008 WL 3889998 at *2. Plaintiff moved to join the non-diverse party only after learning of defendant's desire to remove. <u>Id.</u> In so finding, the court looked for additional reasons plaintiff may have had to want to join the non-diverse party. <u>Id.</u>

Plaintiff, a contractor injured while working at a Lowe's location, sought to join the manager of the location. <u>Hoffman</u>, 2008 WL 3889998 at *1. Plaintiff's amended complaint made clear that the manager was "being sued in his capacity as manager of the Lowe's store...." <u>Id.</u> at *2. However, the court found that, under the doctrine of *respondeat superior*, plaintiff's claim against the manager would be duplicitous, as any negligence on the part of the manager would be imputed to the current defendant, Lowe's. <u>Id.</u> The court concluded that "[t]here is no reasonable basis...for plaintiff's suggestion that in absence of joinder, she would be prevented from fully developing her allegations against Defendant." <u>Id.</u>

<u>Hoffman</u> is distinguishable from this case because City Line's proposed claims against the owners is more akin to claims against joint tortfeasors as opposed to imputed liability. <u>See</u> <u>Massaro v. Bard Access Systems Inc.</u>, 209 F.R.D. 363 (E.D.Pa. 2002) (Robreno, J.), which allowed joinder of joint tortfeasors under 1447(e). In this case, bringing suit against the owners of the property stands as an alternative claim of liability if plaintiff is unable to prove liability against the presently named defendants.

To prevail on the merits of its case and establish an implied contract giving rise to the equitable remedy of quantum meruit, City Line must establish that defendants were unjustly enriched. <u>Durst v. Milroy General Contracting, Inc.</u>, 52 A.3d 357, 360 (Pa.Super. 2012). City Line must show that defendants "wrongfully secured or passively received a benefit that it would be unconscionable...to retain." <u>Id.</u> <u>citing</u> <u>Mitchell v. Moore</u>, 729 A.2d 1200, 1203-04 (Pa.Super. 1999).

Counts I and II of plaintiff's Complaint were entirely based on alleged affirmative representations made by Ms. Cressman and Mr. Vanderheyden in hiring plaintiff to perform services at the Nicos Plant. Furthermore, Ms. Cressman and Mr. Vanderheyden allegedly gave plaintiff specific direction and authority to perform services at the Nicos Plant. These are compelling facts supporting plaintiff's underlying claim against defendants Cincinnati and Shaw. If established at trial, little else may be necessary to find the existence of a contract. At the very least, it may establish that plaintiff is entitled to the fair market value of performance.

Moreover, City Line's prior dealings at the National Plastics Plant fire were with Ms. Cressman and Mr. Vanderheyden. There, City Line contends that it dealt with Ms. Cressman directly, and it appears that Cincinnati paid City Line for services based upon the dealings with Ms. Cressman. In this case, plaintiff claims to have dealt with Ms. Cressman in a similar manner. Thus, it may have been rational for plaintiff to believe that Cincinnati and Shaw were the sole parties with which its claim for compensation for services rendered was directed. Having learned that

(<u>Footnote 23 continued:</u>)

If a plaintiff is aware of the activities of a non-diverse party when filing an original Complaint but does not include them as defendants at that time, "subsequent attempts to join that person as a party will be viewed as an attempt to destroy diversity." <u>Montalvo</u>, 2010 WL 3928536, at *3.  However, "[s]ubsequent developments and the actions of the parties during the time between the filing of the complaint and the motion to amend can also be relevant considerations." <u>Id.</u>

Here, plaintiff concedes that it could have named the property owners in the original Complaint but explains in its motion for leave to file Amended Complaint why it did not do so, as follows:

> In the State Court action, Cressman and Vanderheyden filed Preliminary Objections.  These objections were sustained on May 10, 2012 with the opportunity for Plaintiff to re-plead fraudulent inducement as against Cressman and Vanderheyden with more specificity.  Had Plaintiff chosen that path, the case would have remained in Northampton County as Cressman is a Pennsylvania resident.  Instead, Plaintiff decided to drop Vanderheyden and Cressman from the case based upon answers filed by Cincinnati and Shaw on May 17, 2012 and answers to discovery served by Cincinnati and Shaw on June 8, 2012.
>
> As a result of these answers it was Plaintiff's intention to add the Knicos' to the State Court action as additional Defendants.  However, Defendants Cincinnati and Shaw removed

---

(<u>Continuation of footnote 23:</u>)

defendants disputed whether plaintiff was contracted with for work at the Nicos Plant, City Line moved to join the owners of the Nicos Plant as additional defendants.

> the action to this Court on June 12, 2012 before
> Plaintiff had that opportunity.  Plaintiff now
> seeks to add James and Tara Knicos as defendants
> in line with a proposed Amended Complaint,
> attached hereto as an Exhibit.

However, the decision to join them as defendants at this point of the litigation still appears to be rational and not indicative of an improper purpose because of new developments learned after the original Complaint was filed.

As noted above, plaintiff claims that it learned new information from discovery and from defendants' answers to its original Complaint.  None of the parties have furnished the court with the fruits of discovery, yet defendants argue that discovery produced no new information.  Because of the presumption in favor of state jurisdiction, when faced with a lack of proof to the contrary, I must err on the side of remand.

On the other hand, plaintiff did obtain a key piece of information after receiving defendants' answers to the original Complaint.  Defendants assert that plaintiff was told on the day of the Nicos Plant fire that defendants would not pay for any services rendered at the scene of the Nicos Plant fire.  However, plaintiff contends that it was not told of defendants refusal to pay for services rendered until after defendants received the September 20, 2011 invoice detailing the charges.

Although plaintiff was aware at the filing of the original Complaint on February 13, 2012 that defendants' refusal

to pay City Line was because there was no contract between City
Line and the owners, it was not until defendants responded to the
original Complaint that City Line learned that the timing of this
statement was at issue.

Should the jury ultimately determine that defendants
are correct and that City Line was told at the scene of the fire
on August 2, 2011 that it would not be paid by Cincinnati or
Shaw, plaintiff's only remedy for implied contract and quantum
meruit would likely be against the Knicos as the property owners.
Cincinnati and Shaw may not be liable for implied contract or
quantum meruit if they can establish that they affirmatively
advised plaintiff at the scene of the fire not to do any work.
The jury could conclude that telling City Line that it would not
be paid is effectively the same as telling it not to do any work.

Conversely, if plaintiff is correct and was told it
would not be paid for its services only after Cincinnati received
the invoice, then the factual allegations contained the original
Complaint, if true, may prove its claims against defendants and
there would be no need to join James and Tara Knicos as the
property owners.

Notwithstanding defendants' claim of refusal to pay at
the scene, plaintiff nevertheless performed the services at the
Nicos Plant, services that benefitted the Knicos as property
owners.  Should Cincinnati and Shaw be able to prove their

version of the facts contained in their respective answers to plaintiff's Complaint: that no express or implied grant of authority was given to City Line and that City Line was told at the scene of the fire it would not be paid, plaintiff's only recourse would be against the property owners.  This scenario created a need to join the property owners not evident to plaintiff prior to receiving and reading defendants' answers.

In other words, defendants' answers to the Complaint gave plaintiff new information which plaintiff has now acted upon by joining the property owners.  Admittedly, plaintiff probably could have realized the advantages of joining the owners from the beginning.  However, in light of the other circumstances, failure to do so does not establish that plaintiff's purpose was to defeat diversity jurisdiction.

<u>Plaintiff's Delay Not Dilatory</u>

A plaintiff's action is dilatory when "the purpose of plaintiff's delay...was to prolong the litigation." <u>Kahhan</u>,  2001 WL 1454063, at *2.  Both the length and nature of the delay are relevant.  <u>Montalvo</u>, 2010 WL 3928536, at *3.  However, "the passage of time is not, in and of itself, indicative of dilatory conduct."  <u>Marker v. Chesapeake Life Insurance Company</u>, No. 10-729, 2011 WL 2670004, at *3 (E.D.Pa. July 6, 2011) (Pratter, J.).

While this matter was still in state court and following preliminary objections, plaintiff was given until May 30, 2012 to amend its Complaint.  Plaintiff filed its within motion 34 days later.  Furthermore, the motion came 47 days after defendants filed their answers.  This relatively short delay is not indicative of dilatory behavior.  Because I find that plaintiff did not have an improper purpose for its motion, I conclude that neither the length or nature of the delay was dilatory.

### Plaintiff's Substantial Injury

The Hensgens factors balance competing interests of both plaintiff and defendants.  Plaintiff has the interest of not litigating two cases concurrently in different fora arising out of the same facts, occurrence, or transaction. The caselaw generally states that to require plaintiffs to do so can cause substantial injury.[24]

That said, plaintiff has already filed a separate suit against James and Tara Knicos as property owners in the Court of Common Pleas of Northampton County alleging implied contract and quantum meruit.  Because there appears to be no statute of limitations issue regarding these claims, it is unclear why plaintiff chose to do so.

---

[24]   See Kahhan, 2001 WL 1454063, at *3; Montalvo, 2010 WL 3928536, at *5;

It may be gleaned from plaintiff's choice that litigating two suits will not be substantially burdensome because plaintiff has chosen to do so on its own before I render a decision on the present motion.  However, it can also be gleaned from this choice that plaintiff did so merely to evidence its desire to sue the owners regardless of my decision on the within motion.

Nevertheless, both cases involve facts stemming from the same events.  Litigating this matter twice may injure plaintiffs to some degree by expending resources to fight the same fight in two fora and the possible risk of conflicting decisions.  Although, likelihood of a substantial injury is not present, this factor leans slightly towards plaintiff.

<u>Other Equitable Factors</u>

As noted above, state jurisdiction is preferred over federal jurisdiction and when faced with a close call, I conclude that it is prudent to err on the side of remand.

Judicial economy is an important equitable factor and it is generally served by combining suits containing the same facts and stemming from the same events.  <u>See</u> <u>Kahhan</u>, <u>supra</u>; <u>Montalvo</u>, <u>supra</u>.

Here, the facts giving rise to the claims against defendants Cincinnati and Shaw are at least related to, if not the same facts as, those giving rise to the claims against the

Knicos as the property owners.  Having all the claims involved in this dispute heard by one court rather than two, clearly saves judicial resources.

Defendants do argue that they will be prejudiced because plaintiff is a local Pennsylvania company doing a significant amount of business in Northampton County.  As defendants correctly attest, this prejudice is normally remedied by federal diversity jurisdiction, allowing non-resident defendants to defend themselves in an allegedly less adverse forum.

However, defendants also point out that litigating this case in federal court in Allentown, Pennsylvania versus state court in Easton, Pennsylvania is geographically similar.  Therefore, the potential jury pool will also be similar as both jury pools could contain prospective jurors from Northampton County.  Although defendants' interest in defending themselves in federal court is important, when weighed against the other factors, defendants' claim of prejudice is unpersuasive.

Furthermore, defendants will not be prejudiced by remand because defendants face the application of Pennsylvania law in either forum.  Additionally, allowing joinder of the property owners would not require the development of new facts unknown to the parties.

Finally, defendants' interests may be served by the property owners joining this suit.  Even if plaintiff's motion is denied, it is possible that defendants, as the owners' insurer, will be liable for payment.  If the property owners gave City Line the authority to perform services at the Nicos Plant, it is likely that indemnification may still require defendants to pay. Thus, defendants have an interest in the outcome of any suit against the property owners.

The balance of the equities, along with the weight of the other <u>Hensgens</u> factors lead to the conclusion that it is in the interest of justice to grant plaintiff leave to amend its Complaint and join the non-diverse owners.

<u>CONCLUSION</u>

For the foregoing reasons, plaintiff's motion for leave to amend its Complaint to join the owners, James Knicos and Tara Knicos, is granted.

Furthermore, because joinder of James and Tara Knicos defeats diversity jurisdiction, I grant plaintiff's motion to remand and direct the Clerk of Court to remand this matter back to the Court of Common Pleas of Northampton County, Pennsylvania.